CASE 22—PETITION EQUITY—JUNE 22.

# Sharp's adm'r vs. Proctor's adm'r and heirs.

### APPEAL FROM BARREN CIRCUIT COURT.

1. A married woman, having the right to alienate and convey her general estate, may jointly, with her husband, mortgage it to secure even a prior debt of her husband; and such mortgage will be good as a conveyance of her legal title, and she can only redeem by paying the debt, either out of the land or otherwise. (*Smith, &c., vs. Wilson,* 2 *Met.,* 235; *Johnston vs. Ferguson,* 2 *Met.,* 503.)

2. Land, subsequently inherited from her deceased son, cannot be subjected to the payment of a note executed by a married woman, in conjunction with her husband; which note, contrary to its recitals, was shown, not to have been executed for necessaries, as provided in section 1, article 2, chapter 47, Revised Statutes. (2 *Stanton,* 8.)

3. A married woman and her heirs are not estopped by the recitals in a note and mortgage executed by her, in conjunction with her husband, from showing, by parol evidence, the real transaction and consideration for which she executed the note and mortgage; and in this case the husband was a competent witness for her administrator and heirs for that purpose.

SMITH & SON,                 For Appellant,

CITED—

*Revised Statutes,* 2 *Stanton, page* 8, *sec.* 1.

1 *Bibb,* 271 ; *Querry vs. White.*

2 *Bibb,* 28 ; *Lemaster vs. Buckhart.*

2 *Bibb,* 312 ; *Morris vs. Morris.*

2 *Met.,* 253 ; *Pell vs. Cole.*

3 *Met.,* 335 ; *Marshall vs. Miller.*

1 *J. J. Marshall,* 385 ; *Trustees of Perryville, &c., vs. Letcher.*

2 *J. J. Marshall,* 420 ; 6 *B. Monroe,* 615.

Sharp's adm'r vs. Proctor's adm'r and heirs.

A. J. James and
C. G. Wintersmith,                          For Appellees,

CITED—

*Revised Statutes,* 2 *Stanton, page* 8.
17 *B. Mon.,* 555 ; *Burgen vs. Forsyth.*
15 *B. Monroe,* 83.
2 *Metcalfe,* 252–3 ; *Pell vs. Cole.*
1 *Duvall,* 35–6 ; *Allen vs. Shortridge.*
3 *Met.,* 335 ; *Marshall vs. Miller.*

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT:

November 27, 1860, M. L. Proctor, deceased, and her husband, George M. Proctor, executed to John M. Sharp, deceased, the following note, and the same day executed a mortgage on her lands to secure it:

" $2,299  93.

"For money loaned to, for money advanced to us to purchase necessaries for our family, we promise to pay to John M. Sharp twenty-two hundred and ninety-nine dollars and ninety-three cents, on or before the 27th of November, 1861, with interest from date.

" George M. Proctor,
" M. L. Proctor."

The mortgage recites that the note is given "*for money advanced by Sharp to the parties of the first part to purchase necessaries for their family.*" Subsequently to this mortgage, Mrs. Proctor inherited other land, and before suit was brought she died, leaving one surviving child by her first husband, Bell, and three by her second, Proctor.

Sharp's administrator, by proper proceedings, sought to foreclose said mortgage, and have the land sold ; also to hold the subsequently acquired lands of Mrs. Proctor liable in the hands of her heirs-at-law. This her administrator, children, and heirs resisted, upon the ground that

said note and mortgage were not executed for necessaries, nor for money with which to purchase necessaries, but to secure an indebtedness of her husband, existing at the time, and that the recitals that it was for money loaned and advanced to purchase necessaries for the family were false and fraudulent.

The deposition of the surviving husband and father, George M. Proctor, was taken, but rejected at the instance of Sharp's administrator, because of supposed incompetency growing out of his interest.

G. M. Proctor was not resisting the debt himself. His legal interest would induce him to have his wife's real property subjected, as thereby the debt would be paid, and he not responsible; nor could this be altered because his possible interest as tenant by the courtesy would thereby be lessened; for his whole interest as such tenant would be subject to sale for said debt, if his wife's children should be exonerated from its payment; therefore, whatever may have been his preferences, he was called to testify against his legal interest, and his partialities could only go to his credibility. Regarding his deposition, then, fortified as some of his material statements are by Gorin, and not at all contradicted by Rogers, but even corroborated in some essentials by him, it is apparent that some fifteen hundred dollars of this note was for money advanced and paid to the branch of the Northern Bank of Kentucky at Glasgow, on a debt in which Sharp was G. M. Proctor's security, and which had been created some year or two previously, and the remainder mainly for an account with a grocery firm, and for which Mrs. Proctor is not proved to be in anywise liable.

The case on its merits, then, stands as though G. M. Proctor had executed said note, with his wife as his

security, and she had mortgaged her land to secure it; for neither she nor her heirs are estopped from showing the real transaction by the recitals of consideration, either in the note or mortgage.

By subsection 1, section 1, article 2, chapter 47 (2 *Stant. Rev. Stat.*, 8), it is enacted, that the wife's "real estate, slaves, rent or hire, shall not be liable for any debt or responsibility of his contracted or incurred before marriage; but shall be liable for her debts and responsibilities contracted or incurred before marriage, *and for such contracted after marriage, on account of necessaries for herself or any member of her family, her husband included, as shall be evidenced by writing, signed by her and her husband.*"

By the rules of equity jurisprudence, as understood and administered in this State, a married woman could not, previous to this statute, bind her general estate, in any way, for a debt, but could appoint her separate estate; and, therefore, when she incurred any liability, either as principal or security for her husband, or other person, an appointment of a sufficiency of her separate estate to pay the liability was presumed; but this recited statute expressly authorizes her to become bound, by writing, with her husband, for necessaries, and her general estate liable to pay such incurred responsibilities. Her capacity, however, to bind her general estate, goes no further than the statute allows; and whilst, in various decisions, this court has manifested a disposition to liberally construe the privilege and capacity to bind for necessaries, yet, to become responsible for a previously incurred debt of the husband, has never been construed to fall within this legal capacity; and to so construe it, would be to violate the letter and spirit of the statute, and to take from married women and their heirs the shield intended to preserve and protect their estates.

Nor can this be any fraud upon a creditor; for he must be presumed to know her legal incapacity, and to deal with her as with minors, with a knowledge that she cannot bind herself personally, nor her estate.

But, as decided by this court in *Smith et al. vs. Wilson*, 2 *Metcalfe*, 235, *and Johnson vs. Ferguson, same*, 503, a married woman, having the right of alienation and conveyance, if she mortgage her general real estate to secure even a prior debt of the husband, it will be good as a conveyance of her legal title, and she can only redeem by paying the debt either out of the land or otherwise.

These decisions were made near ten years since, and have remained as the recognized construction of our statutes and the rule governing such cases ever since, without legislative interposition; and we will not now disturb this construction, but adhere to it.

Wherefore, the judgment of the circuit court subjecting the mortgaged land to the payment of the debt, but refusing to subject the land subsequently inherited by Mrs. Proctor from her deceased son, is affirmed.