Head v. Clark.

CASE 56—PETITION EQUITY—MARCH 14.

# Head v. Clark.

APPEAL FROM HENDERSON CIRCUIT COURT.

.1. JUDICIAL SALES—DISCRETION OF COMMISSIONER.—Where a commissioner making a sale under decree of court discovers, after the hammer has ·fallen and the purchaser has been announced, that he has made a mistake, he may announce the fact and proceed with the sale, the parties and the crowd still being present.

   Appellant and appellee were both bidding the same amount at a decretal sale, but the commissioner hearing only appellant's bid, let the hammer fall and announced that appellant was the purchaser. Discovering at once his mistake, he proceeded with the sale, the interested parties and the crowd being still present, and, appellee increasing his bid, the property was knocked off to him. *Held*—That this was proper.

2. SAME.—In so far as the commissioner is not restricted by the terms of the decree or the general law, he has a reasonable discretion as to the time and manner of conducting the sale.

MONTGOMERY MERRITT FOR APPELLANT.

1. The commissioner had no more authority than an ordinary auctioneer as to the acceptance or rejection of a bid. ( Grotenkemper v. Achtermeyer & Co., 11 Bush, 226.)

2. The commissioner had no right to resell after he had knocked down the property to Head, and therefore the court had no right to confirm the sale. (Parsons on Contracts, vol. 1, p. 479; Herman on Executions, p. 327; Blossom v. Railroad Co., 3 Wall, 206; Reamer v. Judah, 13 Bush, 208.)

   Even the court has no *arbitrary* power in the matter of confirming or rejecting the sale. ( 3 Met., top page 145; Stump v. Martin, 9 Bush, 290.)

YEAMAN & LOCKETT FOR APPELLEE.

1. The master commissioner making a sale under a decree of the Chancellor is not upon the same footing as an ordinary auctioneer making sale for individuals. ( 2 Daniels' Chancery, 1271; Vanbussom v. Maloney, 2 Met., 552.)

   But even putting the commissioner upon the same footing as an ordinary auctioneer, he would not, under the circumstances of this case, have exceeded his right in continuing to offer the property.

2. A mere bidder at commissioner's sale is not vested with such interest in the thing being sold as will enable him to override all discretion of the commissioner, or to control the judicial power the court has over the commissioner and the biddings made at his sale. (Taylor v. Gilpin, 3 Met., 546; Stump v. Martin, 9 Bush, 289; Hughes v. Swope, 8 Ky. Law Rep., 256.)
    The case of Grotenkemper v. Achtermeyer & Co., 11 Bush, 222, commented on.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

This is a contest between two bidders at a decretal sale of land, each claiming to have been the purchaser. The bidding at the outset was spirited, several engaging in it, but it finally narrowed to these two contestants. The appellee, J. W. Clark, bid by signs, made by holding up his hand, and which the commissioner making the sale understood and recognized. The appellant, W. G. Head, was outspoken in making his bids. There was quite a crowd present, and some confusion existed. A bid of $5,325 was offered, the commissioner and some of the bystanders understanding it as the bid of Clark, and it was so cried. He testifies, however, that he did not make it. Head then bid $5,350, and so did Clark. The commissioner understood Head's bid only. Some of the persons present testify that Head made this bid, and others appear to have understood it as Clark's bid. It is evident both made it, and that when it was being cried each understood it as his bid. Some of the bystanders thought Head's bid was being cried, while others believed it was the bid of Clark. The hammer fell, and the commissioner announced that the property was sold to the appellant, Head, at $5,350. He asked him to give the initials of his name, and directed the clerk to write his name down as the purchaser, and he did so. The appellee, Clark, then and there claimed that he had made the bid, and

that he was the purchaser. The commissioner at once, and while both parties and the crowd were yet present, but over Head's protest, again offered the property, crying it at $5,350, when Clark bid $5,375, and it was knocked off to him. Head tendered and delivered to the commissioner satisfactory bonds for the $5,350, for which he claimed to have bought the property, and Clark gave like bonds for the $5,375 bid by him. The commissioner reported the facts to the court for its direction and judgment. Both parties to this appeal made themselves parties to the action by proper pleading, each claiming the property.

The lower court held that the action of the commissioner in reoffering the property was, under the circumstances, proper; accepted the bonds of Clark as the purchaser, and Head has appealed. He now claims that when the commissioner knocked off the property to him the contract of purchase was closed, subject, of course, to rejection or ratification by the court upon the master's report; that the master's duties were then at an end; and that no matter what mistake had been made or what misunderstanding had existed, he, from that moment, had no power over the matter and no duty to perform, save to report his action to the court.

It is a general rule as to sales by auction that a bid is a mere offer of purchase, and may be withdrawn until accepted; but when the hammer falls, or the bid is otherwise accepted, it becomes a binding contract. The minds of the parties then meet, and the auctioneer can not, of his own will, rescind the sale. (Grotenkemper v. Achtermeyer & Co., 11 Bush, 222.) In the case of judicial sales the court itself has no mere arbitrary power over them, but must regard the rights of all the parties, including

the purchaser, and exercise a legal discretion as to rejecting or confirming them; and still less has its commissioner, who is a ministerial officer, the power to control them at will.

If it be conceded, however, that, in the case of an ordinary sale by auction, the power of the auctioneer is at an end the moment the hammer falls, and that the contract of purchase is then closed, no matter what mistakes he may have committed, or what misunderstanding may have existed upon his part as to the bidding, yet we are unwilling to say that this is true as to a decretal sale attended by circumstances similar to those now under consideration. In an ordinary sale by auction, the auctioneer is the agent of the seller only, until the sale is made, when, for certain purposes, he becomes the agent of both parties.

A commissioner, acting under a decree, has, however, duties to perform as to the complainant, the vendor, the purchaser and the court; and in the performance of those duties he must exercise his best judgment. He is necessarily invested with a reasonable discretion, in many respects, as to the manner of its exercise, taking care, however, to obey the decree so far as it has given him specific directions. In acting under it, he should adopt all proper means to fulfill its directions; and in doing so, he is, unless restricted by its terms, or the general law, to exercise a sound discretion. He may, for good reason, decline to sell at the time advertised. If there be but one person present, or, by reason of sham bidding, a sacrifice of the property is reasonably certain to occur, he may refuse to proceed.

It was said by the Supreme Court of the United States in Blossom v. Railroad Company, 3 Wall, p. 209, that he might "be justified in postponing the sale to a future day to prevent the sacrifice of the property. Every such officer has a right to exercise a reasonable discretion to adjourn such a sale, and all that can be required of him is, that he should have proper qualifications, use due diligence in ascertaining the circumstances, and act in good faith and with an honest intention to perform his duty."

Undoubtedly a sheriff in selling under execution may exercise his discretion in the respects to which we have alluded, and we see no reason why a commissioner in selling property under decree should not have the same right. The fact that his action is not final until approved by the court does not present a sufficient reason for a distinction.

It would certainly have been proper in this instance, owing to the circumstances attending the sale, for the court, had Head been reported to it as the purchaser, to have set the sale aside. (Rorer on Judicial Sales, section 421.) Why, then, under the circumstances, should its master, when aware of the mistake and misunderstanding upon his part, and with the knowledge that in point of fact when he announced the sale as made there really had been no highest bid offered, and hence no sale in fact made, as directed by the decree, be compelled to report to court instead of proceeding to properly make it? All the parties were still present. The appellant, Head, had an opportunity still to bid for the property. The commissioner had merely announced that he was the preferred bidder, because he thought he was the highest

bidder, when in fact he was not; and, discovering his mistake immediately, and when the interested parties were yet present, he had such a discretion in the matter as authorized him to declare the mistake and proceed with the sale. The decree directed him to sell to the highest and best bidder. At least this was his duty, and he had not done it; and finding at the time that he had not done so, he had a right to comply with the decree in view of the fact that those interested were still present and could not fairly suffer any injustice, but would otherwise, perhaps, obtain an unjust advantage through mistake.

A commissioner ordinarily is left to select the time in the day when he will sell. He may, in the absence of regulation in the decree, adjourn the sale to another hour in order to obtain a fair price; or determine which piece of property shall be first sold; or, owing to sham bidding or lack of bidders, refuse altogether to sell at the time fixed by his notice. He may, when not restrained by the decree or the general law, adopt such measures as are reasonably calculated to promote the fairness of the sale; and it has even been held by many courts that he may adjourn an advertised sale to a different time or place in order to obtain a fair price for the property. (Rorer on Judicial Sales, section 119.)

In our opinion the master had, in view of the existing circumstances, a right to disregard what had occurred by mistake, and proceed with the sale; and that the judgment of the lower court confirming his action was proper.

Judgment affirmed.