**Dr. Mariano DIAZ et al., Appellants,**

v.

**GOODWIN BROTHERS LEASING, INC., Appellee.**

Court of Appeals of Kentucky.

June 28, 1974.

2. That provision of the former statute was omitted by reason of Ex parte City of Ashland, 256 Ky. 384, 76 S.W.2d 43 (1934).

Cecil Davenport, Louisville, for appellants.

Phillip D. Scott, McDonald, Alford & Roszell, Lexington, for appellee.

STEINFELD, Justice.

This is an appeal from a judgment rendered against appellants Doctor and Mrs. Mariano Diaz and Doctor and Mrs. Tomas Yanes, who were guarantors of the performance by Lucky Five, Inc. of the terms of a lease of restaurant equipment, which lease it entered into with appellee Goodwin Brothers Leasing, Inc. We affirm.

■ Appellants argue that because the guaranty was signed on a Sunday it is illegal and unenforceable. This defense was not affirmatively pleaded; it may not be relied on. CR 8.03; Crowder v. Stinson, Ky., 401 S.W.2d 761 (1966).

■ The leased equipment was sold at private sale after Lucky Five had failed to pay the rent and after demand for payment from the guarantors had been ignored. The guarantors argue that Goodwin Brothers should have given them notice before the "collateral" was sold. Neither the lease nor the guarantee agreement provided that Goodwin Brothers should give such notice. Appellants, however, argue that notice was required by KRS 355.9–504(3), but appellees say that no security agreement was involved. KRS 355.1–201(37) provides:

> " * * * Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

The terms of the lease involved in this suit provided that,

> "Upon the expiration or earlier termination of this lease, lessee, at its expense, shall return the equipment in good repair, ordinary wear and tear resulting from proper use thereof alone excepted, by delivering it packed and ready for shipment, to such place or carrier as lessor may specify.
>
> *   *   *   *   *   *
>
> "If lessee fails to pay any rent or other amount herein provided within ten (10) days after the same is due and payable, or if lessee fails to perform any other provision hereof within ten (10) days after lessor shall have demanded in writing performance thereof, or if any proceeding in bankruptcy, receivership or insolvency shall be commenced by or against lessee or its property, or if lessee makes any assignment for the benefit of its creditors, lessor shall have the right, but shall not be obligated, to exercise any one or more of the following remedies: (a) to sue for and recover all rents and other amounts then due or thereafter accruing under this lease; (b) to take possession of any or all of the equipment, wherever it may be located,

without demand or notice, without any court order or other process of law, and without incurring any liability to lessee for any damages occasioned by such taking of possession; (c) to sell any or all of the equipment at public or private sale for cash or on credit and to recover from lessee all costs of taking possession, storing, repairing and selling the equipment, an amount equal to ten percent (10%) of the actual cost to lessor of the equipment sold, and the unpaid balance of the total rent for the initial term of this lease attributable to the equipment sold, less the net proceeds of such sale; (d) to terminate this lease as to any or all items of equipment; (e) in the event lessor elects to terminate this lease as to any or all items of equipment, to recover from lessee as to each item subject to said termination the worth at the time of such termination, of the excess, if any, of the amount of rent reserved herein for said item for the balance of the term hereof over the then reasonable rental value of said item for the same period of time; (f) to pursue any other remedy now or hereafter existing at law or in equity.

"The equipment is, and shall at all times remain, the property of lessor; and lessee shall have no right, title or interest therein or thereto * * *."

It is the opinion of this court that the lease was not a security agreement, therefore KRS 355.9–504(3) is inapplicable. See White and Summers, Uniform Commercial Code, pp. 759–765 (1972).

It is also argued that the sale price of the equipment was unreasonably low. The equipment, which was specially ordered for Lucky Five, cost Goodwin Brothers $32,015.35 in August, 1969, and was sold in January, 1972, for $8,000. The trial court found, on the basis of substantial evidence, that the price received was not unreasonable. We cannot disturb that finding of fact. CR 52.01.

The judgment is affirmed.

All concur.